IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

_____

LYLE RIDOUT,                              :
                                          :
      Plaintiff,                      :
                                          :        Civil No. 4-11-cv-0174
vs                                        :
                                          :
JBS USA, LLC, aka SWIFT BEEF             :        PLAINTIFF'S BRIEF IN SUPPORT
COMPANY,                                  :        OF RESISTANCE TO DEFENDANT'S
                                          :        MOTION FOR SUMMARY JUDGMENT
      Defendant.                     :

_____

     COMES NOW the Plaintiff, Lyle Ridout, through his counsel in the above matter and

submits the following Brief in Support of his Resistance to the Defendant's Motion for Summary

Judgment.

**TABLE OF CONTENTS**

I.     INTRODUCTION.......................................................................................... 2

II.    SUMMARY OF THE ISSUES PRESENTED....................................................8

III.   ARGUMENT....................................................................................................8

     A.     Summary Judgment Standards............................................................ 8

     B.     Plaintiff's Age Discrimination Claim under the Iowa Civil
     Rights Act is supported by substantial evidence that age was
     a determining factor in his termination...............................................10

          1.     Plaintiff has met the Prima Facie requirement....................... 12

          2.     Defendant's asserted legitimate non-discriminatory
                reason...................................................................................17

          3.     Plaintiff's Showing of Pretext.................................................19

     C.     Plaintiff's Age Discrimination Claim under the Age Discrimination
     in Employment Act is supported by substantial evidence that but for
     his age he would not have been terminated.......................................25

IV.   CONCLUSION...............................................................................................27

# I.   INTRODUCTION

The Defendant owns a pork processing plant in Marshalltown, Iowa and all events in this matter took place at this location.  (SOF ¶ 1)

The Plaintiff, Lyle Ridout, began employment at this same location under a predecessor in interest of Defendant in 1969.  (SOF ¶ 2)  The Plaintiff worked at the same location continuously until May 2010 and was credited with 41 years of service.  (SOF ¶3).  At the time of his termination on May 28, 2010, the Plaintiff held the position of Rendering Superintendant at the Defendant's Marshalltown processing plant.  ( SOF ¶ 11)  He was 62 years of age at the time of his termination.  (SOF ¶3).

The Plaintiff has filed a separate Statement of Facts in this matter and refers the Court to that document for reference and will instead focus on a few areas that he believes deserve emphasis.

### *The Prehogor*

Todd Carl asserts that the Plant Engineer, Cyril Thill who was in charge of maintenance told him that the prehogor needed to be repaired every six months.  (SOF ¶48) However, contradicting Carl's assertion, Thill stated the Prehogor was generally changed out every eight months because of normal wear and tear.  (SOF ¶56)  Todd Carl asserted that Ridout's department was responsible because the breakdown of the prehogor was a preventative maintenance issue with steps that should be taken at intervals -- that obviously did not happen, because the breakdown of the prehogor "did not just happen".  (SOF ¶57)  In fact, on the day the prehogor had difficulty that ultimately led to the Plaintiff's suspension and discharge Mike Mortenson, the Assistant Maintenance Department Manager told Dan Purk a Rendering Department employee "I can't believe it went bad".  (SOF ¶58)  The day before the prehogor broke down, "It ground just fine on Wednesday.  We had no problem with it whatsoever".  (SOF

¶59)   Normally when the prehogor started to wear down it would do so rather slowly over a few days giving you time to repair the machine.  (SOF ¶60)  It is not easy to ascertain exactly when the prehogor will break down.  (SOF ¶61) Thill admitted the Maintenance Department played a partial role in the prehogor breaking down.  (SOF ¶65)

<u>Lyle Ridout vs. Others - Discipline</u>

.        Thill admits that his Department, the Maintenance Department, had some responsibility for the status of the prehogor.  (SOF ¶62)  In May 2010 it was customary for the Maintenance Department to do regular inspections of equipment such as the prehogor.  (SOF ¶63)  The individual who scheduled repairs and maintained the prehogor was in the Maintenance Department.  (SOF ¶64)  When the hammers wore out, Thill admits the Maintenance Department played a partial role in the prehogor breaking down.  (SOF ¶65)

The person in the Maintenance Department directly responsible would be "whoever had the P.M. at that time", that individual would have reported to Neil Hardgrave, or some other related supervisor.  (SOF ¶66)  Supervisors such as Hardgrave would be one step down from the Assistant Manager of Maintenance, Mike Mortenson. (SOF ¶67)

No individual in the Maintenance Department received a reprimand of any kind from the breakdown of the prehogor in May 2010.  (SOF ¶68)

Cyril Thill was eventually removed from the position of Plant Engineer because of follow up and doing incomplete work.  (SOF ¶73)  Thill had worked at the plant for approximately forty years.  (SOF ¶74)  Thill was replaced by Mike Mortenson, the same individual who was surprised the prehogor had problems in May 2010. (SOF ¶75)

The company had allocated $2,000,000 to the new projects in the Rendering Unit, but not all of that money had yet been spent, only some of it and there were a lot of projects still

underway within the Department.  (SOF ¶76)  The only major investment that had been made

with this $2 million at the time of the Plaintiff's discharge was the updating of the receiving bin

which had been badly deteriorated. (SOF ¶77)  The only other substantial change that had been

made before the Plaintiff's termination was the creation of the Superintendant position and a

supervisor for each shift and a consultant.  (SOF ¶78)

Thill states he saw Ridout as being resistant to "suggestions" of the consultant Dale

Westerhold, but cannot recall any specifics.  (SOF ¶79)  At the time of the Plaintiff's termination

Mr. Westerhold was coming to the plant every other week and staying Tuesday through

Thursday and working between the Rendering Department and the Waste Water area which was

also undergoing improvements.  (SOF ¶80)

As a consultant Mr. Westerhold would make suggestions or provide lists of items he

thought would assist in the Rendering Department.  (SOF ¶81)  While the Plaintiff did not agree

with all of Mr. Westerhold's suggestions, the Department would try to work with him to

implement his suggestions and the Plaintiff was in favor of anything that would help the

Department.  (SOF ¶82)  The Plaintiff had also been asked to make a list of things to improve the

Rendering Department and his list was "pretty much the list Dale [Westerhold] had given (SOF

¶83)

When asked, Tony Harris the corporate representative who took part in the decision to

terminate Mr. Ridout could not think of a specific example of Mr. Ridout being resistant to

improvements suggested by Mr. Westerhold.  (SOF ¶84)  There were some suggestions that

could not always be completed because there were other tasks that had to get done in a

Department that operated around the clock in three shifts.  (SOF ¶85)  In addition to meeting

with the Plaintiff, the consultant would also meet with Troy Mulgrew, Todd Carl, Cyril Thill,

Russ Crawford in a separate meeting -- the Plaintiff also attended those meetings.  (SOF ¶86)

Among the list of equipment that were being reviewed with an eye to replace them was the prehogor, the latter had been in the plant for quite some time.  (SOF ¶87)  The prehogor's replacement equipment was called a "*hars lift grinder*".  (SOF ¶88)

### Assertion of Insubordination

In May 2010, Cyril Thill was the Plant Engineer, his subordinate was the Assistance Manager Mike Mortenson.  (SOF ¶4)  Lyle Ridout, as the Rendering Department Manager was reviewed by Cyril Thill. (SOF ¶5) Thill did reviews of Ridout's performance on an annual basis, or at least was supposed to do so.  (SOF ¶6)  Ridout requested his personnel file on June 3, 2010.  (SOF ¶7)  The last performance review of Ridout contained in his personnel file was performed for the year 2008, and was 3.63 on a 5.0 scale, meaning he met expectations.  (SOF ¶8)  Thill did not recall ever giving Ridout a bad evaluation.  (SOF ¶9)

Troy Mulgrew testified that he made up his mind to terminate the Plaintiff after the May 14, 2010 incident.  (SOF ¶51)  Mr. Mulgrew never believed that during their conversation that the Plaintiff was invading his personal space.  (SOF ¶52)  The termination form of the Defendant regarding the Plaintiff states he was terminated involuntarily for "inappropriate behavior" with a subsequent comment adding job performance.  (SOF ¶53)  Cyril Thill recalls other heated conversations at the plant between other individuals, but other than the present case cannot recall one that led to termination.  (SOF ¶54)

Tony Harris admitted that arguments, loud voices, and cursing are not uncommon events on the work floor at the plant and is rarely if ever punished.  (SOF ¶55)  The ambient noise in the Rendering Department is usually loud and you have to speak up just to be heard.  (SOF ¶89)  Thill has been present for several disagreements between managers at the plant and seen others

as "heated" as then as on May 14, 2010 involving the Plaintiff, but could not recall any others where a participant was terminated.  (SOF ¶90)

### *Ridout replaced by Younger, Less Qualified Individuals*

Thill admitted that when JBS USA bought the plant in Marshalltown there "had been a culture change".  (SOF ¶10)

The Plaintiff was terminated on May 28, 2010.  (Defendant's SMF ¶49) On that day, the Plaintiff was informed in a meeting at the plant with Tony Harris that "I didn't fit into the scheme, the direction the company was headed".  (SOF ¶72)

The Plaintiff was one of four supervisory employees let go in the few months surrounding his discharge, all were significantly over 40, and three well over 60.  (SOF ¶¶102, 103) The individual who made the decision to terminate Mr. Ridout, Troy Mulgrew, was either 46 or 47 years of age at the time of the former's termination.  (Defendant's SOF ¶8)

Chad Richett replaced the Plaintiff as the Rendering Superintendent, he had previously been a Rendering Supervisor and reported to Ridout.  (SOF ¶91)  Ridout trained Chad Richett how to do his job prior to the latter replacing him.  (SOF ¶92)  At the time of his promotion to replace Lyle Ridout, Chad Richett was in his mid-30s.  (SOF ¶93)  Approximately a year and half after he was promoted in the wake of Ridout's termination Chad Richett was demoted from Rendering Superintendant back to Rendering Supervisor.  (SOF ¶96)  Richett was demoted because of performance.  (SOF ¶97)

Richett was succeeded as Rendering Supervisor by John Holden who was hired in late 2011 from another company.  (SOF ¶98)  John Holden was approximately 33 years of age at the time of his hiring as Rendering Superintendant.  (SOF ¶99)  John Holden had worked at the Marshalltown location some five years before as a Rendering Supervisor.  (SOF ¶100)  John

Holden's first employment at the Defendant's location ended because he had taken a white Rotech Sock, cut two holes in it and to make a facsimile of a Ku Klux Klan hood and displayed it in front of an African-American employee.  (SOF ¶100)

The Defendant provided a list of terminations between July 2009 and July 2010 which included the termination of the Plaintiff along with other management and non-management employees who had their employment cease at the Defendant.  (SOF ¶ 102)  The list of terminations shows that between July 2009 and July 2010 only three supervisors were terminated by the Defendant, all three were over fifty years old, two of them the Plaintiff and Linn Knox were over sixty. (SOF ¶103)

Linn Knox, who was terminated as Project Manager at the age of 64 states that Mr. Mulgrew set time-deadlines for the completion of tasks that were impossible to meet, and his demands required that the whole process take place on a time-schedule that was reckless and could lead to errors.  (SOF ¶104)  Knox states that prior to Mr. Mulgrew's employment as the General Manager, he had a constructive and positive relationship with management and his past performance appraisals were satisfactory and met expectations. (SOF ¶105)

In his dealings with Mr. Mulgrew, Knox reports that Mulgrew regularly had unrealistic expectations of what work could be performed and unreasonable time-lines for such work to be completed, while comparatively Mulgrew was not short of patience with younger employees. (SOF ¶106)

Knox states that his relationship and treatment by Mr. Mulgrew causes him to believe that the reason he was terminated in January 2010 was motivated by his age At the time he was 64 years of age.   (SOF ¶107)

Similarly, another older salaried employee - and former supervisor -- Dean Welton, then

age 66, felt poorly treated by Mr. Mulgrew.  (SOF ¶108)  Mr. Welton recalls that after

Mulgrew's hiring the company had appeared to be looking for reasons to terminate him and

punish him for the most petty of reasons.  (SOF ¶109)  Welton further states it had been his

impression that since Mr. Mulgrew became manager that older employees were more closely

scrutinized or punished for offenses a younger employee would not have received punishment, or

receive as severe punishment.  (SOF ¶110)  Welton further provided examples of different

treatment of himself and the observed offenses of younger employees.  (SOF ¶111)  Welton

believes there was a willful effort on the part of management to discipline him without engaging

in even a basic investigation before he received disciplined.  (SOF ¶112)

## II.    SUMMARY OF THE ISSUES PRESENTED

The first issue addressed below is whether the Plaintiff's termination was an motivated by

his age pursuant to the Iowa Civil Rights Act.  The second issue addressed is whether the

Plaintiff's termination would not have occurred but for age discrimination pursuant to the Age

Discrimination in Employment Act in the wake of *Gross v. FBL Financial Services, Inc.*, 129

S.Ct. 2343, 2350 (2009).  The Plaintiff asserts that the answer is in the affirmative under both

laws and their interpretation.

## III.    ARGUMENT

A.    <u>Summary Judgment Standards</u>

Motions for summary judgment essentially "define disputed facts and issues and . . .

dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment

rule is to isolate and dispose of factually unsupported claims or defenses. . . .").

Summary judgment is only appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the nonmoving party based on the evidence").

The moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving

party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

"Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby,Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The Eighth Circuit Court of Appeals recognized in a number of panel decisions that summary judgment is "disfavored" or should be used "sparingly" in employment discrimination cases. *See id.*, at 1043 (collecting such cases in an Appendix). The rationales for this "employment discrimination exception" were that "discrimination cases often turn on inferences rather than on direct evidence. . . .," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and that "intent" is generally a central issue in employment discrimination cases. *See, e.g., Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005) (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting

*Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))).

> B.  Plaintiff's Age Discrimination Claim under the Iowa Civil
>     Rights Act is supported by substantial evidence that age was
>     a determining factor in his termination

The defendant asserts that Summary Judgment should be granted in regard to the

Plaintiff's claim of age discrimination under the ICRA, IOWA CODE CH. 216. Under the ICRA,

employers are precluded from taking adverse employment actions against employees because of

their age. *See* IOWA CODE § 216.6(1)(a); *McCune v. State*, 789 N.W.2d 102, 2010 WL

624900, at *2 (Iowa Ct. App. Feb. 24, 2010) (unpublished table decision) ("Under the

Iowa Civil Rights Act, it is unlawful to discriminate against an employee on the basis of

the employee's age."); *see also Newberry v. Burlington Basket Co.,* 622 F.3d 979, 982

(8th Cir. 2010) ("The ICRA, like the ADEA, provides for liability when a defendant

discharges an employee 'because of' age.").

Generally, when considering age discrimination claims brought under the ICRA,

the Iowa courts "turn to federal law interpreting the Age Discrimination in Employment

Act (ADEA)." *Weddum v. Davenport Community School District,* 750 N.W.2d 114, 118

(Iowa 2008) (citing *McMannes v. United Rentals, Inc.,* 371 F. Supp. 2d 1019, 1027 (N.D.

Iowa 2005)); *see also Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999) (observing

that Iowa courts traditionally turn to federal law for guidance in evaluating the ICRA).

"Federal law, however, is not controlling." *Vivian,* 601 N.W.2d at 873.

"Under the Iowa Civil Rights Act, a plaintiff may prove discrimination with direct

evidence or by the indirect, burden shifting method of proof established in *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Reiss*

*v. ICI Seeds, Inc.*, 548 N.W.2d 170, 174 (Iowa Ct. App. 1996); *see King v. United States,*

553 F.3d 1156, 1160 (8th Cir. 2009) ("A plaintiff may establish her claim of intentional

"'Direct evidence is that which demonstrates a specific link between the challenged employment

action and the alleged animus.'" *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th cir. 2001) (quoting

*Kells v. Sinclair Buick-GMC Truck, Inc.,* 210 F.3d 827, 835 (8th Cir. 2000)); *see Browning v.*

*President Riverboat Casino-Mo., Inc*., 139 F.3d 631, 634 (8th Cir. 1998) ("'Direct evidence'"

has been interpreted as "conduct or statements by persons involved in the decision-making

process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient

to permit the fact-finder to find that that attitude was more likely than not a motivating factor in

the employer's decision.") (quoting *Thomas v. First Nat'l Bank*, 111 F.3d 64, 66 (8th Cir. 1997),

which in turn quotes *Kriss v. Sprint Communications Co.*, 58 F.3d 1276, 1282 (8th Cir. 1995)).

age discrimination through either direct evidence or indirect evidence."); *see also Ward*

*v. Int'l Paper Co.,* 509 F.3d 457, 460 (8th Cir. 2007); *Spencer v. Stuart Hall Co*., 173

F.3d 1124, 1127 (8th Cir. 1999). Each of these types of ADEA claims has slightly

different elements. *Spencer*, 173 F.3d at 1127 (citing *Bevan v. Honeywell, Inc.*, 118 F.3d

603, 609 n.1 (8th Cir. 1997)).

    The parties dispute whether the record generates a genuine issue of material fact as to

circumstantial evidence of age discrimination under the *McDonnell Douglas* burden-shifting

analysis.

### 1.    *Plaintiff has met the Prima Facie Requirement*

    Under *McDonnell Douglas* and its progeny, the employment discrimination plaintiff has

the initial burden of establishing a *prima facie* case of discrimination by producing evidence that

would entitle the plaintiff to prevail unless contradicted and overcome by evidence produced by

the defendant. *Tuttle v. Missouri Dept. of Agriculture*, 172 F.3d1025, 1029 (8th Cir. 1999); *White*

*v. McDonnell Douglas Corp.*, 985 F.2d 434, 435 (8th Cir. 1993). The importance of the *prima*

*facie* showing is that it creates the inference that the employer terminated the plaintiff for an

impermissible reason. *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir. 1995). As to the

first stage of the *McDonnell Douglas* burden-shifting analysis, the Iowa Supreme Court has

explained that to establish a prima facie case of intentional age discrimination under the ICRA, a

plaintiff must show that: he was "in a protected age group, qualified for the job, discharged,

[and] replaced by a younger person." *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 453

(Iowa 1989); *see Sievers v. Iowa Mut. Ins. Co.*, 581 N.W.2d 633, 638 (Iowa 1996) (holding that

to establish a *prima facie* case under the ADEA a plaintiff must show that "'[he] was a

member of a protected class, performing [her] work satisfactorily, and had adverse action

taken against [him].'" ) (quoting *Vaughan v. Must, Inc.,* 542 N.W.2d 533, 538 (Iowa

1996)); *Bearden v. Int'l Paper Co.*, 529 F.3d 828 (8th Cir. 2008) (explaining that to

establish a *prima facie* case under the ADEA a plaintiff must show that: "(1) [she] was a

member of the protected group (at least 40 years old); (2)[she] was qualified to perform

the job; (3)[she] suffered an adverse employment action; and (4) circumstances permit an

inference of discrimination."); *see also Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639,

642 (8th Cir. 2008); *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039-40 (8th

Cir. 2007); *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004); *Mayer v. Nextel*

An adverse employment action is "a significant change in employment status,

such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits." *Burlington Indus.,*

*Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).*West Corp.,* 318 F.3d 803, 806-07 (8th Cir. 2003).

"Once established, the prima facie case entitles the plaintiff to a rebuttable presumption

that intentional discrimination played a role in the adverse employment action." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995); *accord Tuttle*, 172 F.3d at 1029; *Krenik v. County of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995); *Kobrin v. University of Minn.*, 34 F.3d 698, 702 (8th Cir. 1994).

In the present case, the Plaintiff, Lyle Ridout, has met made the *prima facie* case. Obviously, being terminated at age 62 he has met the initial burden required under the ADEA and by proxy the Iowa Civil Rights Act as being over 40 years of age. (SOF ¶3). At the time the Plaintiff had been employed for more than 41 years and had been a supervisor in the rendering department for some time. (SOF ¶¶3-11). The Plaintiff was obviously qualified for his current job and to be retained as an employee with the Defendant.

The Defendant asserts that the Plaintiff has not established the second element of the *prima facie* case asserting it is defined as whether "the [Plaintiff] was meeting his employer's reasonable expectations at the time he was terminated". (Defendant's Brief pg. 7) The Defendant cites this standard relying upon *Erenberg v. Methodist Hospital*, 357 F.3d 787, 793 (8th Cir. 2004). However, this definition of the second element of the prima facie case put forth in *Erenberg* has been subsequently rejected by the Eighth Circuit. See *McGinnis v. Union Pacific Railroad*, 496 F.3d 868, 874 n. 2 (8th Cir. 2007)(under the second prong, the qualification prong, a plaintiff need only show that they possessed the basic skills necessary to perform the job, not that they were doing it satisfactorily); see also, *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011)("plaintiff should not be tasked with anticipating and disproving employer's reasons for termination during prima facie case); *Wexler v. White's Fine Furniture, Inc.* 317 F.3d 564, 575-76 (6th Cir. 2003).

Further, this second element, even if defined as the Defendant errantly wishes, shows that

14

Plaintiff was meeting this requirement.  Ridout had a history of satisfactory or better performance reviews and little to no disciplinary notices.  Any other evidence he was not meeting expectations by the employer is compromised by the fact it suddenly stopped performing annual reviews upon him after 2008.  (SOF ¶¶ 6-9)   Further, his direct supervisor Mr. Thill cannot recall ever giving Mr. Ridout a negative evaluation. (SOF ¶9)

Further, the plaintiff's statements on May 25, 2010, relied upon by the Defendant were made in a situation where he was fearing for his job, he testified in his deposition on the very loud work floor he did not think he was being disrespectful or aggressive, just necessarily loud. (SOF ¶42)  Even Todd Carl admitted that on May 14, 2010, the plaintiff only seemed "a little aggressive".  (SOF ¶43)  It certainly creates a fact question that a very long-term employee is fired over a single incident that the defendant admits occurred in a loud environment and that the terminated long-term employee seemed only a "little aggressive".

On May 28, 2010, the Plaintiff was informed he was terminated from employment, so he obviously suffered an adverse job action.  (SOF ¶11, 72)

There is substantial evidence that infers age discrimination in the Plaintiff's discharge. He was one of a small group of supervisors and exempt employees terminated in just a few months -- who were well over 40 years of age (SOF ¶102)  Two other similarly situated employees of the Defendant, Linn Knox and Dean Welton, had experienced similar terminations over minor events and received heightened levels of scrutiny and punishment since Troy Mulgrew became General Manager.  (SOF ¶102, 103)

At the time of his termination, the Plaintiff was told by Todd Harris that he "didn't fit into the scheme, the direction the company was headed".  (SOF ¶72)  Similar is the statement of Cyril Thill that with the purchase of the plant by the Defendant there had been a "culture change".

15

(SOF ¶10)  Another indication of this "culture change" working against individuals of Ridout's age was the fact that after receiving regular annual reviews indicating he had at a minimum "met expectations" on his job performance, his last years at the plant showed there had been no reviews of him conducted.  (SOF ¶¶ 6-9)

The Plaintiff was replaced by a substantially younger employee, Chad Richett, who was also substantially less qualified than the Plaintiff.  (SOF ¶¶91, 93, 96-98)  Ridout had trained Richett as a supervisor.  (SOF ¶92)  While the Defendant says it terminated Ridout for insubordination arising from one incident, when it replaced Richett it went outside the company to hire another substantially younger employee, John Holden.  (SOF ¶¶98, 99)  Holden had been terminated some five years earlier for taunting an African-American employee with a piece of material he had fashioned into a Ku Klux Klan hood.  (SOF ¶101).  It is obviously a question of fact to compare of what is more insubordinate and offensive; that Mr. Ridout was fired after 40 plus years of service on the basis of being too argumentative once or hiring back an employee who had engaged in blatantly racially offensive conduct.

There are other indicia of age-based discrimination based upon the events surrounding the prehogor and how it surprised everyone that the machine broke down so quickly and unexpectedly, from both the rendering and mechanical departmental standpoints.  (SOF ¶58-61)  The procedures for replacement were promptly followed and by the time Ridout was confronted on the work floor the prehogor was again operating nominally.  (SOF ¶¶18-27) No individual other than the Plaintiff was disciplined for the event.  (SOF ¶¶62-68)

The plaintiff has clearly established the *prima facie* case.  The burden shifts to the employer to rebut this presumption by producing evidence that the employer made the questioned employment decision for a legitimate, non-discriminatory reason. *See Wing v. Iowa*

*Lutheran Hosp.*, 426 N.W.2d 175, 178 (Iowa Ct. App. 1988); *see also Sievers*, 581 N.W.2d at

638; *Vaughan,* 542 N.W.2d at 538; *Tuttle*, 172 F.3d at 1029; *White*, 985 F.2d at 435. The

employer's explanation of its actions must be "clear and reasonably specific," *Texas Dept.*

*of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981)..

> **2.      Defendant's Asserted Legitimate Non-Discriminatory Reason**

The Defendant's asserted bases for the discharge is "[Ridout's] unacceptable and

unprofessional behavior on May 14, 2010".  (Defendant's Brief pg. 9).  However, the evidence

supports that this incident was neither unacceptable nor unprofessional.  The then Plant Engineer

and Ridout's immediate supervisor, Cyril Thill, recalled other heated conversations at the plant

between other individuals, but other than the present case could not remember another leading to

termination.  (SOF ¶¶54, 90)   Mr. Mulgrew's supervisor, Tony Harris, admitted that arguments,

loud voices, and cursing are not uncommon events on the work floor at the plant and are rarely,

if ever, punished.  (SOF ¶55)  The ambient noise in the Rendering Department is usually loud

and you have to speak up just to be heard.  (SOF ¶89)  Troy Mulgrew, himself, never believed

that Ridout was invading his personal space.  (SOF ¶52)

The defendant relies upon a handful of cases to assert that summary judgment is proper

here.  However, a review of those authorities establishes significant factual differences between

the present matter and those relied upon by Defendant.

The Defendant assets that as it claims Mr. Ridout was terminated for "unacceptable and

unprofessional behavior on May 14, 2010" the Plaintiff cannot show pretext.  In making this

assertion it relies first upon *Canady v. Wal-Mart Stores, Inc*, 440 F.3d 1031, 1034-5 (8th Cir.

2006) to assert that yelling at other employees and customers was a legitimate, non-

discriminatory reason for termination.  However, a review of *Canady* reveals significant

differences.  One is that *Canady* occurred at a retail establishment and before its customers. Obviously there is a significant difference between a retail setting and an industrial plant work area in that the latter is neither an area for customers and is very loud, unlike a retail setting. Other basic but significant differences from Mr. Ridout's situation are that *Canady* asserted a race-harassment claim; the individuals involved in the argument where the yelling took place were not the individuals *Canady* asserted were engaging in harassment and those same individuals made the discharge decision, not the alleged harasser; *Canady* was also openly and objectively violating a company rule at the time he was confronted.  See, *Canady* at 1033-1034.

In *Dock v. Des Moines Independent School District*, 604 F.Supp.2d 1230 (S.D. Iowa 2009) the Plaintiff asserted a race-discrimination claim, but the Plaintiff in *Dock* was terminated not only for insubordination -- which again appeared in a non-industrial setting and involved not just yelling (one of several times the Plaintiff had been warned about her abusive behavior unlike Mr. Ridout's zero) but the invasion of her supervisor's personal space (unlike the present matter, see SOF ¶ 52) -- but also in "combination with behavior in an abusive manner toward another that itself created a hostile work environment".  See *Dock* at 1242.

The *Barkhoff* case relied upon by the Defendant is again not appropriate as an authoritative reason for granting Summary Judgment in this case as it has two key distinctions. First, in addition to issues of discourteous behavior of the Plaintiff showing substantial issues with her attitude, there were also significant problems on the Plaintiff's part in not showing up for work when scheduled.  See, *Barkhoff v. Bossard North America, Inc.*, 648 F.Supp.2d 1096, 1103-4  (N.D. Iowa 2010).  Second, the court found that despite the argument of the Defendant these issues were supplemented by Plaintiff with other evidence indicating discrimination and the Summary Judgment motion of the Defendant on the age discrimination claim was denied

under both the Federal and State aspects.  See *Barkhoff* at 1108-9.

The defendant asserts that the court should view the plaintiff's assertion of age discrimination, rather dubiously, because he was terminated by an employee over 40 years of age, specifically that Harris was 56 (Defendant's SOF ¶29) and Mulgrew either 46 or 47 (Defendant's SOF ¶8).  Defendant asserts that the ages of these gentlemen, apparently especially Harris, though it was Mulgrew that made the decision to terminate, makes the plaintiff's case more difficult.  (Defendant's Brief at 16).

However, such an assertion is in error, each and every one of the cases cited by the Defendant were considered and rejected in a subsequent case, *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 361 (7th Cir. 2001):

> "it is altogether common and natural for older people, first, to exempt themselves from what they believe to be the characteristic decline of energy and ability with age; second, to want to surround themselves with younger people; third to want to protect their own jobs by making sure the workforce is not too old, which might, if 'ageist' prejudice is rampant, lead to RIFs of which they themselves might be the victims; and fourth, to be oblivious to the prejudices they hold, especially perhaps prejudices against the group to which they belong. We emphatically rejected the 'same-actor inference' in the race-discrimination setting in *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 745 (7th Cir.1999), and our conclusion there applies with equal force to proof of age discrimination."

For all intents and purposes this is simply the application of the Supreme Court's holding in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307 (1996)(fact that one person in protected class has lost to another in the protected class is irrelevant as long as they have lost out because of age) to the relationship of decision-maker to plaintiff instead of plaintiff to fellow employee.

### 3.      *Plaintiff's showing of pretext*

Assuming the Defendant has met its not particularly onerous burden of producing a

legitimate non-discriminatory reason for Plaintiff's discharge, the analysis differs, as the

Defendant agrees, under the Iowa Civil Rights Act from that of the ADEA in the wake of *Gross.*

(Defendant's Brief at 18)

In *Deboom v. Raining Rose, Inc.,* 772 N.W.2d 1, 13-14 (Iowa 2009), a case decided after

*Gross,* the Iowa Supreme Court determined that the causation standard in ICRA discrimination

cases is that a "plaintiff need only demonstrate 'termination occurred under circumstances giving

rise to an inference of discrimination' and his or her status as a member of a protected

class was *a* determining [or motivating] factor in the decision to terminate employment."

*Deboom,* 772 N.W.2d at 13. In *Schott v. Care Initiatives,* 662 F. Supp. 2d 1115 (N.D. Iowa

2009), the Northern District (Judge Bennett) interpreted *Deboom* as follows:

> Notwithstanding that the Iowa Supreme Court did not mention
> *Gross* in its analysis, this court believes that it could not be
> clearer that the Iowa Supreme Court does *not* impose a 'but
> for' causation standard in any ICRA employment
> discrimination case, based on age or any other protected
> characteristic, and that the appropriate causation standard in
> such cases is 'motivating factor.' In short, the causation
> standards for [a plaintiff's] age discrimination claims under
> federal and state law are *different,* as a matter of law, even if
> the same analytical framework is otherwise applicable to the
> two claims.
> *Id.* at 1120.

The Eighth Circuit has reaffirmed the contention that the Iowa Supreme Court's

interpretation of the Iowa Civil Rights Act created a lower "motivating factor" standard.  See

*Newberry v. Burlington Basket Co.,* 622 F.3d 979, 981-83 (8th Cir. 2010)(in light of *Gross* and

*DeBoom* a jury instruction requiring that age be a "motivating factor" would be error in a claim

under the ADEA but not under the Iowa Civil Rights Act)

The Defendant asserts that the Plaintiff cannot provide evidence of pretext as the final

step of the burden-shifting framework because Ridout cannot show that the Defendant's articulated reason "his insubordinate behavior toward management on May 14, 2010, coupled with his declining performance" were the reasons for his discharge  (Defendant's Brief at 18)

However, as stated above, the Plaintiff produced substantial evidence undermining the articulated reason as being false. The Plant Engineer and Ridout's immediate supervisor, Cyril Thill recalls other heated conversations at the plant between other individuals, but other than the present case could not remember another leading to termination.  (SOF ¶¶54, 90)  Mr. Mulgrew's supervisor Tony Harris admitted that arguments, loud voices and cursing are not uncommon events on the work floor at the plant and was rarely if ever punished.  (SOF ¶55)  The ambient noise in the Rendering Department is usually loud and you have to speak up just to be heard.  (SOF ¶89)  Troy Mulgrew, himself, never believed that during their conversation that the Plaintiff was invading his personal space.  (SOF ¶52)

Further, there is no credible evidence of the Defendant's declining performance.  In May 2010, Cyril Thill was the Plant Engineer; his subordinate was the Assistance Manager Mike Mortenson.  (SOF ¶4)  Lyle Ridout, as the Rendering Department Manager was reviewed by Cyril Thill. (SOF ¶5) Thill did reviews of Ridout's performance on an annual basis, or at least was supposed to do so.  (SOF ¶6)  Ridout requested his personnel file on June 3, 2010.  (SOF ¶7)  The last performance review of Ridout contained in his personnel file was performed for the year 2008, and was 3.63 on a 5.0 scale, meaning he met expectations.  (SOF ¶8)  Thill did not recall ever giving Ridout a bad evaluation.  (SOF ¶9)  In the context of a discharge claim, as the present matter is, showing that the discharge was not attributable to the two analogous common legitimate reasons for discharge: performance below the employer's expectations or the elimination of the plaintiff's position altogether.  See *George v. Leavitt*, 407 F.3d 405, 412 (D.C.

Cir. 2005) citing *Lex K. Larson, Employment Discrimination*, §8.08[4](2nd. ed. 2005).

There is, however, substantial evidence that the Defendant's actual reason for the Plaintiff's discharge was on the basis of his age.  At the time of his termination, the Plaintiff was told by Todd Harris that he "didn't fit into the scheme, the direction the company was headed".  (SOF ¶71)  This is accompanied by the statement of Cyril Thill that with the purchase of the plant by the Defendant there had been a "culture change".  (SOF ¶10)  Another indication of this "culture change" working against individuals of Ridout's age was the fact that after receiving regular annual reviews indicating he had at a minimum "met expectations" on his job performance, his last years at the plant showed there had been no reviews conducted.  (SOF ¶¶ 6-9).

Further, there exists substantial evidence that the Plaintiff's termination fit a pattern that existed in the company in 2010 and that Mr. Mulgrew, in particular, looked for reasons to eliminated older salaried employees.  Linn Knox, who was terminated as Project Manager at the age of 64 states that Mr. Mulgrew set time-deadlines for the completion of the locker room that were impossible to meet, and his demands required that the whole process take place on a time-schedule that was reckless and could lead to errors.  (SOF ¶104)  Knox states that prior to Mr. Mulgrew's employment as the General Manager, he had a constructive and positive relationship with prior management and his past performance appraisals were satisfactory and met expectations. (SOF ¶105)

In his dealings with Mr. Mulgrew, Knox reports that Mulgrew regularly had unrealistic expectations of what work could be performed and unreasonable time-lines for such work to be completed, while comparatively Mulgrew was not short of patience with younger employees. (SOF ¶106)

Knox states that his relationship and treatment by Mr. Mulgrew causes him to believe that his termination was motivated by his age in January 2010, when he was 64 years of age. (SOF ¶107)

Similarly, another older salaried employee - and former supervisor -- Dean Welton, age 66 at the time, felt similarly treated by Mr. Mulgrew.   (SOF ¶108)  Mr. Welton recalls that after Mulgrew's hiring he appeared to be looking for reasons to terminate him and punish him for the most petty of reasons.  (SOF ¶109)  Welton further states it had been his impression that since Mr. Mulgrew became manager that older employees were more closely scrutinized or punished for offenses a younger employee would not receive punishment, or receive as severe punishment. (SOF ¶110)  He further provided examples of different treatment of himself and the observed offenses of younger employees, the latter being treated more favorably.  (SOF ¶111)  There appeared to be a willful effort on the part of management to discipline Welton without engaging in even a basic investigation before he received disciplined.  (SOF ¶112)

The experience of Knox and Welton, as older employees in being monitored and treated more harshly than other, younger, employees matches that of Mr. Ridout.   Further, the same individuals, particularly Mr. Mulgrew are involved.  On method by which a plaintiff can show pretext is by demonstrating they were treated differently from similarly situated employees who are not part of the protected class.  See, *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005), citing *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999); *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999)

Further, the evidence is clear that Mr. Ridout's successors undercut the claim that he was terminated, not for his age, but for "his insubordinate behavior toward management on May 14, 2010, coupled with his declining performance"  (Defendant's Brief at 18).  Mr. Ridout was

replaced by a substantially younger employee, Chad Richett, who was less qualified than the Plaintiff.  (SOF ¶¶90, 92, 95-97)   Ridout had also trained Richett.  (SOF ¶91)

While the Defendant says it terminated Ridout for insubordination stemming from a single incident; yet to replace Chad Richett the company hired a former employee with another younger employee, John Holden.  (SOF ¶¶97, 98)  Holden had been terminated some five years earlier for taunting an African-American employee with a piece of equipment he had fashioned into a Ku Klux Klan hood.  (SOF ¶100).   It strains credulity for the same individuals to terminated Lyle Ridout for being insubordinate and then hiring someone who had previously been terminated for racially offensive conduct.  If Mr. Ridout no longer fit into the "scheme of the company" one wonders just what "scheme" the company desired to have, if Mr. Richett and Mr. Holden are preferred as somehow more qualified and less insubordinate?  Evidence of a plaintiff's qualifications, standing alone, may be sufficient to prove pretext.  See, *Shelley v. Geren*, 666 F.3d 599, 610 (9th Cir. 2012), citing *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003)

A plaintiff can "establish pretext by showing that it was unlikely [that] an employer would have acted on the basis of the proffered reason."  See, *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001).  Evidence of a discriminatory attitude in the workplace "may also tend to show that the employer's proffered explanation for the action was not the true reason for the discharge."  *Id.*

The plaintiff has shown that there is substantial evidence that the defendant's asserted basis for discharge is not the actual reason for his termination.  "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination and it may be quite persuasive." *Reeves v. Sanderson*

*Plumbing Prods.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); see also *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)(in addition to showing employer's reason false or did not actually motivate adverse action, plaintiff can show pretext by showing proffered reason was insufficient to warrant challenged conduct) .  In "appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.*   The jury deserves to make that determination in this case.

> C.     Plaintiff's Age Discrimination Claim under the Age Discrimination in
>        Employment Act (ADEA) is supported by substantial evidence that but for
>        his age he would not have been  terminated

As the Defendant states in its Brief, and alluded to above, since the Supreme Court's decision in *Gross v. FBL Financial Services*, 129 S.Ct. 2343 (2009),  the standards of the *McDonnell Douglas* burden shifting standard, as applicable in the present case, are the same under both Federal and Iowa law until the final stage.  At that point, while under Iowa law the plaintiff need show that age was a "motivating factor" in his discharge, after *Gross*, under the ADEA a plaintiff must show at this final point that "but for" age discrimination he would not have been discharged.  See, *Gross* at 2351, see also *Tusing v. Des Moines Independent Community School District*, 639 F.3d 507, 516 (8th Cir. 2011).

Therefore, under the ADEA in the summary judgment context, the plaintiff must show sufficient evidence to (1) create a "fact issue as to whether the defendant's proffered reasons are pretextual" and (2) create " a reasonable inference that age was a determinative factor in the adverse employment decision." *Tusing* at 516, citing *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)

A "determinative factor" is one that "made a difference in deciding whether the

plaintiff should be employed." *Gross v. FBL Financial Services*, 588 F.3d 614, 621 (8th Cir. 2009), citing *Geller v. Markham*, 635 F.2d 1027, 1035 (2d Cir. 1980).

The Plaintiff has produced sufficient evidence to demonstrate that age was a determining factor.  First, as stated in detail in the previous section dealing with the Iowa Civil Rights Act, the Plaintiff has shown there is a fact issue as to whether the defendant's reasons are pretext.   Substantial evidence that the Plaintiff's termination fit a pattern that existed in the company in 2010 and of Mr. Mulgrew, in particular, to look for reasons to eliminate older salaried employees, in that he did so in short order with the Plaintiff, Linn Knox, and Dean Welton.  Each of them were terminated for events that were at worst common or petty events that had not previously led to discharge; were replaced or treated differently than younger, similarly situated employees; were more closely scrutinized by a manager that appeared to be looking for reasons to terminate them.

Further, as stated above, the Plaintiff was replaced by substantially younger employees who were not as qualified as he had been, and in the case of one, guilty of a far more serious offense than the worst possible interpretation that could be derived from the plaintiff's conduct claimed by the Defendant.

Thought the defendant claims poor performance, there is a lack of evidence of poor performance on the plaintiff's part other than a presumption on the part of his younger supervisors and decision-makers.

As stated in the previous section, the plaintiff has shown there is substantial evidence that the  defendant's stated reason for his discharge are false and that age discrimination is the real reason for his discharge.  See, *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 872-3 (8th Cir. 2009); *Kohrt v. MidAmerican Energy Co*., 364

F.3d 864, 897-8 (8th Cir. 2004).  The matter should proceed to be determined by the ultimate trier of fact, the jury.

## CONCLUSION

For all the reasons stated above, the Defendant's Motion for Summary Judgment on the Plaintiff's claims of age discrimination in employment under the Iowa Civil Rights Act (Iowa Code §216) and the Age Discrimination in Employment Act (ADEA) should be denied and the matter allowed to proceed to trial.

Date:  July 2, 2012

> */s/John O. Haraldson_____*
> John O. Haraldson AT0003231
> Sellers Haraldson & Binford
> 400 Locust St., Suite 170
> Des Moines, Iowa 50309
> Tel: (515) 224-6686
> Fax: (515) 224-6760
> email: haraldsonlaw@yahoo.com
>
> ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2012, I caused the foregoing to be served on the following via the Court's CM/ECF system, which will send a notice of electronic filing to:

Gene R. La Suer
Davis, Brown, Koehn, Shors & Roberts, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa 50309-3993

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202

> */s/John O. Haraldson_____*
> John O. Haraldson